UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JIMIE L. STARKS, Individually<br><br>Plaintiff,<br>v.<br>PARBALL CORPORATION, d/b/a BALLY'S LAS VEGAS, a Nevada Corporation; and DOES I through X, inclusive; ROE CORPORATIONS I through X, inclusive<br><br>Defendants. | Case No. 2:13-cv-02286-MMD-GWF<br><br>ORDER<br><br>(Def.'s Motion for Summary Judgment – dkt. no. 42;<br>Pl.'s Request for Previling (sic) Judgment – dkt. no. 48;<br>Def.'s Countermotion to Strike – dkt. no. 51) |

**I.     SUMMARY**

This case involves an employment dispute. Before the Court is Defendant Parball Corporation d/b/a Bally's Las Vegas's ("Parball") Motion for Summary Judgment ("Motion"). (Dkt. no. 42.) The Court has considered Plaintiff Jimie L. Starks' ("Starks") Opposition to Motion for Summary Judgment ("Opposition") (dkt. no. 46) and Parball's Reply (dkt. no. 47). Also before the Court are Starks' Request for Previling (sic) Judgment for Plaintiff ("Motion for Prevailing Judgment) (dkt. no. 48) and Parball's Opposition and Countermotion to Strike ("Countermotion") (dkt. no. 51). For the reasons discussed below, the Court grants Parball's Motion and strikes from the record Starks' Motion for Prevailing Judgment.

**II.    BACKGROUND**

Starks, who is African American, was a baker in Parball's Bake Shop from 1994 through August 21, 2012, when he was involuntarily terminated. (Dkt. no. 42-29.) Parball

purportedly terminated Starks because he failed to meet performance standards. (*Id.*) Starks asserts that he met Parball's performance expectations as a baker for fifteen years and that he was subjected to a race-based discriminatory "double standard" for the last several years of his employment. Parball does not dispute that Starks performed satisfactorily for fifteen years, but contends that Starks began to experience difficulty in completing his duties in early 2010 when the Bake Shop took on the preparation of baked goods for an additional property, which resulted in an increased workload for the entire staff. (Dkt. no. 42-3 at 137:5-138:2.)

On April 4, 2011, Starks filed a Charge of Discrimination ("the EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC") alleging that, beginning on or about May 19, 2010, he was subjected to different terms and conditions of employment due to race discrimination.[1] (Dkt. no. 42-12.) Before filing the EEOC Charge, Starks received three "write-ups" pursuant to Parball's progressive discipline policy. This policy, as outlined in Parball's Employee Handbook, provides that "less severe offenses are viewed cumulatively and will normally be handled on a four-step basis of progressive discipline": Documented Coaching (first step); Written Warning (second step); Final Written Warning (third step); and Separation of Employment (fourth step). (Dkt. no. 42-5.) First, Starks received a Documented Coaching for over-proofing the large croissants on March 10, 2009. (Dkt. no. 42-7.) Second, Starks received a Written Warning for overfilling the muffin cups on March 1, 2010, resulting in a loss of product. (Dkt. no. 42-8.) And third, Starks received a Final Written Warning (reduced to a Written Warning) for failing to complete his assigned tasks in a timely manner on May 19, 2010, resulting in the Chef having to finish the job. (Dkt. no. 42-9.) During this time period, Starks also made several written complaints to Parball's Human Resources Department ("HR"), alleging that he was given an unfair share of the workload due to his race and that he was unfairly disciplined. (*See* dkt. no. 46-1 at 7-9 and 59-61.)

---

[1] Starks also alleged disability discrimination, but he does not pursue that claim in this action.

After filing the EEOC Charge, Starks continued to receive "write-ups" for performance-related issues. Starks received a Documented Coaching for failing to complete his assigned tasks in a timely manner on July 13, 2011, resulting in the Chef having to finish the job. (Dkt. no. 42-15.) Next, Starks received a Documented Coaching for violating the attendance policy. (Dkt. no. 42-16.) And on August 4, 2011, Starks received a Written Warning for over-proofing all of the large cinnamon rolls, which resulted in a loss of product. (Dkt. no. 42-17.) During this time period, Starks also made several written complaints to Parball's HR, alleging that he was being discriminated against because of his race. (*See* dkt. nos. 42-2 at 74-76 and 79-83, 46-1 at 25-33.)

Starks filed an amended EEOC Charge on November 15, 2011, alleging that his employer's discriminatory treatment was ongoing and becoming retaliatory in nature. (Dkt. no. 46-2 at 110.) Thereafter, Starks continued to file voluntary statements with HR (*see* dkt no. 46-1 at 23) and receive "write-ups" for performance related issues. Starks received a Written Warning for acting in an uncourteous manner towards a chef on March 12, 2012. (Dkt. no. 42-22.) Starks received a Final Written Warning for failing to complete his assigned tasks in a timely manner on July 18, 2012, and July 19, 2012. (Dkt. no. 42-23.) On August 12, 2012, Starks was suspended pending an investigation. (Dkt. no. 42-24.) Finally, on August 21, 2012, Parball terminated Starks for failing to complete his assigned tasks on July 30, 2012, and August 6, 2012. (Dkt. nos. 42-28, 42-29.)

Starks filed another EEOC Charge on September 11, 2012, alleging that he was suspended and discharged from employment because of his race and in retaliation for his complaints about the discriminatory treatment.[2] (Dkt. no. 46-2 at 127.) On September 26, 2013, the EEOC issued a Dismissal and Notice of Rights letter for this claim.[3]

///

---

[2] The EEOC previously issued a Dismissal and Notice of Rights letter on May 17, 2012 for the earlier Charges. (Dkt. no. 42-21.)

[3] As neither party provided this letter, the Court obtained the information from Starks' FAC. (Dkt. no. 4 at 3.)

Starks filed this lawsuit on December 16, 2013. His First Amended Complaint ("FAC") alleges claims for race or national origin discrimination and retaliation under Title VII and NRS § 613.330.[4] (Dkt. no. 4.) Parball now moves for summary judgment.

## III.   LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence

---

[4] Due to similarities between the two laws, Nevada courts have looked to federal courts' constructions of Title VII in interpreting NRS § 613.330. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). Thus, the Court analyzes Starks' state and federal claims arising under anti-discrimination statutes together under the federal standards.

negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.   DISCUSSION**

As an initial matter, the Court acknowledges Starks' argument that his filings are held to less stringent standards because he is proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Moreover, *pro se* litigants are bound by the same rules of procedure as other litigants. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Accordingly, although Starks is appearing *pro se*, the Court is obligated to hold him to the same standards as it would any other non-moving party on a motion for summary judgment.

**A.   Race or National Origin Discrimination**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A

plaintiff in a Title VII case must establish a prima facie case of discrimination." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997). "If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision." *Id.* "If the defendant provides such a reason, then in order to prevail, the plaintiff must demonstrate that this reason is pretextual." *Id.*

In order to establish a prima facie case of disparate treatment, the plaintiff must produce evidence that "give[s] rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Where, as here, no evidence of direct discriminatory intent is presented, a plaintiff may create a presumption of discriminatory intent through the factors set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted). To establish a prima facie case under *McDonnell Douglas*, a plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for his position and performed his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Here, the parties do not dispute the first and third elements; as an African American Starks is a member of a protected class, and Starks suffered an adverse employment action when Parball terminated his employment. However, Parball contends that Starks cannot establish that he performed his job satisfactorily or that similarly situated non-African American employees were treated more favorably.

Even viewing the evidence in the light most favorable to Starks, the Court finds that he cannot establish a prima facie case of race discrimination. Starks argues only that he performed satisfactorily for his first fifteen years of employment. However, that fact alone is insufficient evidence to show that Starks was performing satisfactorily at the time he was terminated — especially in light of Parball's undisputed disciplinary evidence demonstrating Starks' performance-related issues that persisted for the last

6

several years of his employment, and which coincide with the Bake Shop's increased workload. Starks points to no evidence to show the Court that he was performing his job satisfactorily when he was involuntarily terminated. Starks simply provides additional reasons as to why he did not adequately perform, but these do not undermine Parball's perspective that he was not satisfactorily performing his duties as a baker at the time of his termination. Accordingly, Starks has not satisfied his burden to establish a prima facie case of race discrimination.[5]

However, even assuming *arguendo* that Starks can establish a prima facie case of race discrimination, Parball identifies a legitimate nondiscriminatory justification for the adverse employment action. Specifically, Parball has a legitimate interest in preparing sellable baked goods in a timely matter and it provides ample evidence documenting Starks' poor performance. Moreover, Parball establishes that it terminated Starks pursuant to its discipline policy after it had undergone all steps of progressive discipline required by the policy and Starks was unable to correct his performance deficiencies. Thus, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

At the pretext stage the plaintiff must provide "specific, substantial evidence of pretext."[6] *Wallis*, 26 F.3d at 890. A plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

///

---

[5] Because Starks does not meet his burden to show he performed his job satisfactorily, the Court will not address whether similarly situated individuals outside his protected class were treated more favorably.

[6] The Court notes that this requirement applies to circumstantial evidence, not to direct evidence. *See Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1038 (9th Cir. 2005) (holding that specific and substantial requirement does not apply where discrimination plaintiff brought forth direct evidence of discriminatory animus). Starks' claim proceeds on the basis of circumstantial evidence, as he does not present any direct evidence of bias against African American employees or in favor of non-African American employees.

Here, Starks offers no specific or substantial evidence of pretext. Starks does not contend that Parball's reason for termination is untrue. Rather, he asserts that race-based discrimination is the real reason for his termination because his supervisors applied a "double standard" against him. To support this argument, Starks provides documents consisting of photographic illustrations and hand-written statements to demonstrate that his non-African American coworkers also finished late[7] and prepared unsellable products[8] by not following proper procedure. Not only are these documents unauthenticated, but the Court cannot discern what a majority of the photographs actually depict, or verify Starks' description of the scenes, due to their poor quality. Even considering the gist of Starks' argument — that his coworkers committed the same infractions, but were either given extra time to complete their tasks or not disciplined — Starks' statements alone are insufficient to show pretext because they are conclusory, speculative, and uncorroborated by admissible factual evidence. *See S.E.C. v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007) (stating that an uncorroborated and self-serving declaration is one that includes facts beyond declarant's personal knowledge and provides no indication as to how declarant knows the facts to be true); *Villiarimo v. Aloha Island Air, Inc.* 281 F.3d 1054, 1061 (9th Cir. 2002) (finding that uncorroborated, self-serving testimony alone does not create a genuine issue of material fact precluding summary judgment); *see also Korkosz v. Clark Cty.*, 379 F. App'x 593, 596 (9th Cir. 2010) (holding that evidence based on plaintiff's "uncorroborated, self-serving speculation" is insufficient to show an employee's nondiscriminatory reason is pretextual). Moreover, to the extent that the Court can ascertain what some of the

---

[7] For example, Starks states: "This Pic.-72 illustrate that not only did April, not finish her Planet Hollywood, order in previous pic.-71 . . . but she is now 7 min. late in above Pic.-72, and according to my estimation she had approx. 20, more minutes to go and that's with Jorge, help. . . . just like always she never finish on time and the supervisors always give her extra help and never write her up for this." (Doc. 46 at 56.)

[8] For example, Starks states: "These photos above [and] below illustrate that on this date a portion of the Lg. Croissants were over proof. The above photo is the ideal size while the below photo is clearly over proof / over size by comparison. Quirrino, was the oven man this date and he was not written up." (Doc. no. 46-2 at 28.)

photographs depict, they simply do not support Starks' allegation that Parball terminated Starks because it was motivated by a race-based discriminatory "double standard," rather than his poor job performance.

Additionally, Starks attributes his poor performance to the fact that his supervisors assisted his coworkers with their duties, but they did not provide him with adequate assistance so he could also finish on time.[9] However, as explained above, the photographic illustrations and explanations Starks presents are insufficient evidence of pretext. Even considering the essence of Starks' argument, beyond his own speculation, he fails to present specific or substantial evidence that his supervisors were motivated by a race-based discriminatory purpose. To the contrary, Starks does not dispute that his supervisors and coworkers *did* help him to complete his assigned tasks. (*See* dkt. no. 42-27.) Rather, Starks infers that his supervisors did not provide him with as much assistance as he believed they should have, but this does not show any discriminatory motive. Moreover, the additional explanations Starks provides as to why he was unable to perform to Parball's expectations do not establish pretext. For example, Starks' mere speculation that he was purposefully interrupted at the end of his shift so he would finish late is not substantial evidence that his supervisors were motivated by a race-based discriminatory intent to cause him to fail to perform his duties in a timely manner. Accordingly, the Court grants Parball's Motion as to Starks' race discrimination claim.

**B.     Retaliation**

Title VII makes it unlawful for an employer to discriminate against any employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

---

[9]For example Starks states: "This Pic.-78, once again illustrate Supervisor Jorge, filling Planet Hollywood muffin order for my co-worker April, because Jorge, knew giving (sic) the pace that April, is working at she will not finish on time if he doesn't help her." (Dkt. no. 46 at 58.)

The *McDonnell Douglas* burden-shifting framework also applies to Starks' retaliation claim. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). A prima facie case of retaliation requires showing that: (1) the plaintiff engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between these two events. *Villiarimo*, 281 F.3d at 1064. Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was pretext.

Starks' retaliation claims fails because he does not provide sufficient evidence to establish a causal link between his involvement in protected activities — his filing of the EEOC Charges — and the adverse employment action — his termination. "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). Here, however, the nine-month gap between when Starks filed his amended EEOC Charge and his termination is too long to reasonably infer that the adverse employment action is causally related to the protected activity. Even if the Court considers the progressive nature of Parball's disciplinary policy, the three and four-month gaps between the protected activities and the disciplinary actions are likewise insufficient to make a reasonable inference.[10] Although these times are closer, the Court finds that this fact alone is insufficient to create a fact question as to causation, *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient"), especially given Starks' entire disciplinary history from 2009 through 2012.

---

[10]Specifically, Starks received a Documented Coaching approximately three-months after filing his claim with the EEOC (dkt. no. 42-15) and he received a Written Warning approximately four-months after amending the claim with the EEOC (dkt. no. 42-22).

Further, even if Starks could establish a causal link — and therefore a prima facie case of retaliation — the Court finds that, as discussed above, Parball presents legitimate reasons for terminating Starks, which Starks fails to demonstrate as being pretextual.[11] Accordingly, the Court grants Parball's Motion as to Starks' retaliation claim.

### C. Motion for Prevailing Judgment (dkt. no. 48) and Countermotion (dkt. no. 51)

In his Motion for Prevailing Judgment, filed on November 10, 2015, Starks requests that the Court either grant him a "prevailing ruling" from the bench based on the evidence he presented in his Opposition to Parball's Motion or deny Parball's Motion. (Dkt. no. 48.) In its Countermotion, filed on November 30, 2015, Parball argues that Starks' Motion for Prevailing Judgment should be stricken from the record as a "fugitive" document. (Dkt. no. 51.) Parball also moves for sanctions in an amount of reasonable attorney's fees and costs expended in responding to the motion. (*Id.*)

Local Rule 7-2 of the Local Rules of Civil Practice permits the filing of a motion, a response, and a reply. Moreover, the Rule provides that the time for filing a motion for summary judgment is governed by Federal Rules of Civil Procedure 56(b). A document not allowed by Local Rule 7-2, or otherwise permitted by order of this Court, is a fugitive document and must be stricken from the record. *Reiger v. Nevens*, 3:13-cv-00218-MMD-VPC, 2014 WL 537613, at *2 (D. Nev. Feb. 7, 2014). Here, Starks' Motion for Prevailing Judgment is a fugitive document because the dispositive motion deadline has long expired; Parball's Motion was fully briefed; and the Court did not otherwise grant Starks leave to file the Motion for Prevailing Judgment. Accordingly, the Court grants Parball's

///
///

---

[11]Starks does not dispute Parball's identification of the protected activities as Starks' filing of the Charges with the EEOC. However, to the extent that Starks' written statements to HR, which seem to largely coincide with instances in which Starks believed he would be disciplined (*see* dkt. no. 46-1 at 7-9), could also be construed as an opposition to the employer's activity, the Court finds that Starks has still not met his burden to establish pretext.

Countermotion (dkt. no. 51) and orders that Starks' Motion for Prevailing Judgment (dkt. no. 48) be stricken from the record.[12]

However, the Court denies Parball's motion for sanctions for reasonable attorney's fees. While the Court has the authority to impose "any and all appropriate sanctions" on a party for failing to comply with the Local Rules, the Court finds that imposing this sanction would be inappropriate given Starks' *pro se* status. LR IA 4-1.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions.

It is therefore ordered that Defendant's Motion for Summary Judgment (dkt. no. 42) is granted.

It is further ordered that Defendant's Countermotion to Strike (dkt. no. 51) is granted. Plaintiff's Request for Previling (sic) Judgment for Plaintiff (dkt. no. 48) is stricken from the record. Defendant's request for sanctions is denied.

The Court instructs the Clerk of Court to enter judgment in favor of Defendant in accordance with this Order and close the case.

DATED THIS 30th day of March 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[12] Even if the Court considers the merits of Starks' Motion for Prevailing Judgment, the Court would deny it because, as explained above, Starks did not present sufficient evidence to establish a prima facie case or pretext for either of his claims.